UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-44-H

INDIANA INSURANCE COMPANY                                    PLAINTIFF

V.

SUNTRUST MORTGAGE, INC.,                                     DEFENDANTS
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND and WILLIAM H.
ROCKWOOD

**MEMORANDUM OPINION**

A house owned by William Rockwood in Prospect, Kentucky was severely damaged by flooding from a burst pipe in late 2004 and then subsequently burned to a total loss in March 2005. Rockwood had purchased a homeowner's insurance policy from Plaintiff Indiana Insurance Company ("Indiana"), and had refinanced the home with SunTrust Mortgage, Inc. ("SunTrust") At the time of the flood and fire, SunTrust had begun a foreclosure action against Rockwood. Indiana filed this action seeking a declaratory judgment that it does not owe insurance monies to Rockwood or SunTrust. Indiana has moved for summary judgment, and has also moved to amend its complaint. For the following reasons, the Court will deny the motion for summary judgment and sustain the motion to amend the complaint.

I.

Sometime in 1991, Rockwood purchased a house at 7113 Covered Bridge Road in Prospect, Kentucky (hereinafter "the property"). He apparently lived at this home for some time. In September 2001, he refinanced his home through a mortgage with SunTrust. By the summer of 2003, immersed in personal and financial difficulties, Rockwood began falling behind on his

mortgage payments. On October 21, 2003, SunTrust initiated foreclosure proceedings. On March 29, 2004, Rockwood signed an application for homeowner's insurance with Indiana.

On July 9, 2004, SunTrust purchased homeowner's insurance from Fidelity and Deposit Company of Maryland ("Fidelity of Maryland"), after learning that Rockwood had let a previous homeowner's policy lapse. On November 23, 2004, final judgment was entered against Rockwood in the foreclosure action, and a foreclosure sale of the property was scheduled for March 8, 2005. Sometime around January 1, 2005, a frozen pipe burst at the property, causing serious water damage. Rockwood filed a claim shortly thereafter with Indiana for the water damage. In the early morning hours of March 3, 2005, a fire broke out at the property; the house burned to a total loss. Rockwood was not at the property at the time of the water damage or the fire.

A central portion of the parties' dispute is whether Rockwood was in fact living in the property between April 2004 and March 2005; that is, whether the property was actually his *residence*. Rockwood is a firefighter by trade, and has served in a variety of administrative positions in various fire departments in Louisville. His schedule is therefore understandably somewhat erratic, in that he spends some nights at the firehouse. Furthermore, during the period in question, he was engaged to be married to his current wife and apparently spent many nights at her residence.

On June 3, 2003, SunTrust hired Fidelity Field Services ("Fidelity") to conduct periodic inspections and maintenance of the property. Fidelity conducted monthly inspections for the remainder of 2003 and throughout 2004. Although some of Fidelity's inspections revealed persons living in the house, a number of inspections in 2004 reported that the house was "vacant,

secure." Fidelity personnel at one point changed the locks on the property and at another drained and covered the property's pool.

Rockwood states that a tenant named Sean Gilbert lived in the house from the summer of 2003 to early March 2004. Rockwood then moved back into the property that same month. His attorney complained to SunTrust about Fidelity's visits to the home after that time, characterizing them as trespassing.

Indiana argues that the home was essentially vacant – and was not Rockwood's residence – during most of 2004. Indiana relies upon the inspections conducted by Fidelity and upon the utilities records of the property. It does not appear that the property had gas service from June 2004 onward. Water to the property was cut off for non-payment on July 27, 2004, although it was apparently restored in August 2004 through non-official means. There is serious dispute about when exactly electrical service was cut off to the house: either it was "officially" cut off by Louisville Gas and Electric around November 4, 2004, or it was cut off sometime in late November or early December 2004, when a tree fell on the line connecting the property to the electrical grid. In any case, by Christmas 2004, Rockwood and a friend moved two large commercial propane heaters and fuel tanks into the property to maintain some level of heat in the home. After the water damage, however, Rockwood was not living in the property, but was performing and supervising repair work on the property.

II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The Court must view all facts in a light most favorable to the non-moving parties and give the non-movants "the benefit of all reasonable inferences that can be drawn from the facts." *Stack v. Killian*, 96 F.3d 159, 160 (6th Cir. 1996). Plaintiff has moved for summary judgment against both Rockwood and SunTrust. The Court will first examine the basis for summary judgment against Rockwood in this section, and then turn to SunTrust in the next section.

### III.

Indiana rests its motion for summary judgment against Rockwood on two arguments: first, that Rockwood violated the terms of the Indiana homeowner's policy when he failed to actually live there during much of 2004, and second, that Rockwood voided the policy by making misrepresentations during the investigation of both the flood and the fire. The Indiana policy defines the "insured location" as the "residence premises," which was further defined in the policy as "the one family dwelling . . . where you reside and which is shown as the residence premises in the Declarations." The policy does not further define "residence." The Kentucky Court of Appeals has defined residence as "a factual place of abode or living in a particular locality." *Old Reliable Ins. Co. v. Brown*, 558 S.W.2d 190, 191 (Ky. Ct. App. 1977).

Indiana argues that if Rockwood did not reside at the property, the policy is void. Based on a careful review of the evidence and despite the aid of counsels' arguments, the Court is unable to conclude that the evidence supports summary judgment in favor of Indiana. The record is replete with serious disputes about what exactly happened at the property from March 2004 until the fire in March 2005. The utility records, the inspection reports by Fidelity, and the statements from Rockwood and others paint an altogether muddled picture of how often

4

Rockwood lived at the property during that time period. Although it seems likely that Rockwood was not sleeping at the property every night, or even many nights per week, there is some evidence that he was at the property on at least a semi-regular basis. He was there often enough, for instance, to notice that Fidelity was entering the house and to instruct his attorney to attempt to curtail such inspections. He was there enough to notice that Fidelity had changed the locks and drained the swimming pool. He was also there regularly enough to install portable propane heaters and to have some bare minimum of personal belongings in the property. None of these facts conclusively establish Rockwood's residence at the property, but they certainly preclude summary judgment.

Indiana's second argument is equally difficult to accept at this stage. Essentially, all of the statements Indiana claims are misrepresentations are related – directly or indirectly – to the question of residency. Indiana claims that Rockwood stated falsely that he was living in the house at the time of flooding damage, that he was entertaining guests a pool parties during the summer of 2004, and that the flooding at the property occurred shortly after a tree fell and knocked out power to the house. The Court has already concluded that genuine issues of material fact exist surrounding these questions, and that therefore summary judgment would be inappropriate at this time.

### IV.

Indiana's motion for summary judgment against SunTrust presents an even more complex question. Pursuant to the terms of the SunTrust mortgage, Rockwood was obligated to maintain insurance to protect SunTrust's mortgage interest, and therefore the Indiana policy identified SunTrust as an "additional interest." The policy included a clause that stated:

> If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee
>> (a) Notifies us of any change in ownership, *occupancy, or substantial change in risk* of which the mortgagee is aware;

(emphasis added).  Indiana argues that SunTrust was aware of this provision of the policy, was aware of the vacancy of the property because of the regular reports made by Fidelity, and thus was required by the terms of the policy to notify SunTrust that the property was vacant.  In support of its argument that SunTrust had notice of the policy, Indiana submits an affidavit made by Sharon Mulvaney, an employee of Electronic Data Systems Corporation ("EDS").  Mulvaney stated that as part of her job, she faxed the Indiana policy to SunTrust.  In support of that statement, she has submitted a "Mortgage Fax Report," which purports to show that the relevant Indiana policy was faxed to "SUNTRUST" on April 9, 2004.  SunTrust argues in response that it was unaware of the policy and its details and that, furthermore, it was not aware that Rockwood had changed his "occupancy" of the house (even if Fidelity had reported to SunTrust on several occasions that the property was "vacant").

      Based on the Court's review of the evidence, it is unable to conclude for purposes of summary judgment that SunTrust had effective notice of the provisions of the Indiana policy.  It is certainly likely that SunTrust received a copy of the Indiana policy from EDS in the regular course of business.  It is also likely that SunTrust understood the notification provision discussed above.  However, the Court cannot definitively reach that conclusion based on the evidence before it.  Even assuming *arguendo* that SunTrust did receive the Indiana policy and was aware of the notification procedures, the evidence before the Court – as discussed *supra* – does not definitively support the conclusion that SunTrust *knew* the house was vacant.  It is true that

6

several of the reports from Fidelity stated that the house was "Vacant – secure" or "Vacant no one living there [sic]," some of those same reports also stated that personal property was on site and that the "property/grounds [are] maintained well." The inspection reports – taken alone – do not affirmatively establish that Rockwood was not residing in the property. It is certainly possible that Indiana could prove this fact at trial, but too many genuine issues of material fact exist for summary judgment to be granted in Indiana's favor.

V.

Finally, Indiana has moved to amend its complaint to remove one count against Rockwood. That count asserted that Rockwood could not collect on the Indiana policy because he had made material misrepresentations on his application for the policy. A party may amend its complaint "at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). It is true that Indiana could have been much prompter in its motion to amend. However, there is no practical reason to keep a count in the Indiana's complaint when Indiana has essentially stated that it would present no evidence at trial in support of such claim. Therefore, the Court will sustain Indiana's motion to amend.

       The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record